**MEMO ENDORSED**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

vs.                                                    Docket No: 7:11cr630

MARK JONES,

    Defendant.
_____/

## MOTION FOR COMPASSIONATE RELEASE AND REDUCTION OF SENTENCE UNDER 18 U.S.C. § 3582(c)(1)(A) DUE TO COVID 19 PANDEMIC

COMES NOW, Mark Jones, ("Jones") according to Title 18 U.S.C. § 3582(c)(1)(A)(i), § 1B1.13 of the US Sentencing Guidelines, and 28 CFR Section 571.61 and seeks this Court to grant him compassionate release from FCI Gilmer, Federal Prison to time served. In support of this request, Jones provides as follows:

### INTRODUCTION

Upon his a judgment on an indictment after pleading guilty to a violation of conspiracy to distribute and possession with intent to distribute crack cocaine, (Title 21 U.S.C. § 846), and possession of a firearm in connection with a drug trafficking offense, (Title 18 U.S.C. § 924(c)(1)(A)(ii), Jones was sentenced to 84 months incarceration, followed by 4 years supervised release. (D/E 721). The

judgment was later amended to 72 months in light of Amendment 782. (Dkt. 1140)[1] No appeal nor post-conviction motions are pending. He is currently serving his term of confinement at the FCI Gilmer, in West Virginia, and has a current release date of October 27, 2022. In light of the coronavirus, Jones is requesting a release due to extraordinary circumstances and due to his medical conditions.

## LEGAL STANDARD

Under 18 USC § 3582(c)(1)(A)(i) a Court may modify a term of imprisonment "upon motion of the Defendant after the Defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the Defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the Jones facility, whichever is earlier, may reduce the term of imprisonment ... after considering the factors outlined in section 3553(a) to the extent that they are applicable, if it finds that— (i) extraordinary and compelling reasons warrant such a reduction." 18 USC § 3582(c)(1)(A)(i).

### I. Jones's Exhaustion of Remedies

On August 5, 2020, Jones requested a compassionate release from the Warden at FCI Gilmer due to the COVID19 pandemic. He was denied on August

---

[1] The original sentence was 84 months and 4 years supervised release as imposed on May 9, 2013. (D/E 721). That judgment was amended to 72 months on December 15, 2015 pursuant to Amendment 782. (D/E 1140).

2

6, 2020. (See Exhibit A). Thus, Jones has exhausted his required administrative remedies. See, *United States v. Kranz*, 2020 U.S. Dist. LEXIS 88623, at *6 (S.D. Fla. May 20, 2020) (upon motion of the Director of the Bureau of Prisons, or upon motion of the Defendant after the Defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the Defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the Defendant's facility, whichever is earlier.)

**II. If no action is taken the outcome could be devastating.**

Jones is in the process of obtaining his BOP medical records to craft this motion for compassionate release when the coronavirus broke out, however, the BOP is overwhelmed with similar requests. Coronavirus is known to cause serious health complications for individuals with and worse for pre-existing conditions. A coronavirus exposure is the equivalent of a death sentence that this Court did not impose on him. If he is not released from custody before the virus runs rampant at his jail, it will place him at risk of contracting the disease and suffering serious health complications, or worse. Contracting the coronavirus in prison could be a death sentence. Should Jones be left in the facility, he will remain in a vulnerable situation. As of today, there are approximately 27,555,951 worldwide-confirmed cases with 887,919 deaths. In West Virginia, where Jones is serving his sentence, there are 11,661 confirmed cases and 250 resulting deaths. The threat of COVID19

3

is equally pervasive within the BOP facilities with over 12,749 inmates and 1,626 staff members testing positive for COVID19. At least, 118 reported deaths of federal inmates and two Staff reported deaths have occurred.[2] At FCI Gilmer, where Jones is housed, there are six *confirmed* inmate cases of COVID19 and one staff case.[3] The prison has also started moving inmates from other institutions via the US Marshall's that is only compounding the spread of COVID19. (See, "Con Air is Spreading COVID19 all Over the Federal Prison System."[4] Unfortunately, this number will grow. At FCI Gilmer only 151 tests have been performed[5] where over 1,308 inmates are housed.[6] Only 11% of the FCI Gilmer population has been tested. Given the growing number of cases in West Virginia and the increasing

---

[2] https://www.bop.gov/coronavirus/

[3] Due to the rapidly evolving nature of this public health crisis, the BOP will update the open COVID-19 confirmed positive test numbers and the number of COVID-19 related deaths daily at 3:00 p.m. The positive test numbers are based on the most recently available *confirmed lab results* involving open cases from across the agency as reported by the BOP's Office of Occupational Health and Safety. BOP field sites may report additional updates throughout the day. Data is subject to change based on additional reporting. (Source: https://www.bop.gov/coronavirus/).

[4] https://www.themarshallproject.org/2020/08/13/con-air-is-spreading-covid-19-all-over-the-federal-prison-system?utm_medium=email&utm_campaign=newsletter&utm_source=opening-statement&utm_term=newsletter-20200813-2103&utm_source=The+Marshall+Project+Newsletter&utm_campaign=6b857e528e-EMAIL_CAMPAIGN_2020_08_13_11_33&utm_medium=email&utm_term=0_5e02cdad9d-6b857e528e-174540393

[5] https://www.bop.gov/coronavirus/

[6] https://www.bop.gov/mobile/about/population_statistics.jsp#bop_pop_table

4

challenges in testing inmates and staff potentially exposed to COVID19, it is only a matter of time before the infection spreads to further to staff and inmates at FCI Gilmer's Federal Prison. At that time, it may be too late to prevent Jones from contracting the potentially deadly virus. As of April 18, 2020, "33 % of all BOP Facilities" are infected with COVID19.[7] The coronavirus is a particular threat to prison populations because of the circumstances of confinement and the inmates' proximity to each other.[8] BOP wide, it is estimated that more than 70% of all federal prisoners tested have tested positive for COVID-19.[9]

According to the CDC, COVID19 spreads mainly among people who are in close contact (i.e., within approximately 6 feet) and therefore limiting close contact with others is the best way to reduce the spread of COVID19.[10] COVID19 spreads when an infected person coughs, sneezes, or talks, and droplets from their mouth or nose are launched into the air and land in the mouths or noses of people nearby or are inhaled into the lungs. A person may contract COVID19 by touching

---

[7] https://www.bop.gov/resources/news/20200417_dir_message.jsp

[8] https://www.businessinsider.com/trump-consider-coronavirus-executive-order-federal-prisons2020-3

[9] Source: https://www.wsj.com/articles/more-than-70-of-inmates-tested-in-federal-prisons-have-coronavirus-11588252023

[10] CDC, *Prevent Getting Sick, Social Distancing*, available at https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/socialdistancing.html. (hereinafter, "CDC Social Distancing Guidelines") (last accessed July 7, 2020).

a surface or object that has the virus on it and then touching their mouth, nose, or eyes.[11] COVID19 spreads very easily and sustainably between people and is spreading more efficiently than influenza.[12] *Anyone* can contract COVID19 and spread it to others.[13] Recent studies indicate people who are Infected with the novel coronavirus but do not have symptoms likely also play a role in the spread of COVID19.[14] The more closely a person interacts with others and the longer that interaction, the higher the risk of COVID19 spread.[15] Therefore, the CDC advises that maintaining a social distance of approximately 6 feet "is very important in preventing the spread of COVID-19,"[16] and "is one of the best tools we have to avoid being exposed to this virus and slowing its spread."[17] Per the CDC, "[s]ocial distancing is especially important for people who are at higher risk of severe illness

---

[11] *Id.*

[12] CDC, *Prevent Getting Sick, How COVID-19 Spreads*, available at https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covidspreads.html (last accessed July 7, 2020).

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] CDC Social Distancing Guidelines.

6

from COVID-19."[18] Among adults, the risk of severe illness or death from COVID-19 increases with age.[19] Additionally, individuals of any age who have serious underlying medical conditions, including individuals with chronic obstructive pulmonary disease, serious heart conditions such as heart failure, coronary artery disease, or cardiomyopathies, Type 2 diabetes, chronic kidney disease, sickle cell disease, immunocompromised state from a solid organ transplant, and obesity (body mass index of 30 or higher) are at increased risk for severe illness or death from COVID-19.[20] Individuals at any age might be at increased risk of severe illness from COVID-19 if they have the following conditions: asthma, cerebrovascular diseases, cystic fibrosis, hypertension or high blood pressure, immunocompromised state from blood or bone marrow transplant, immune Jonesiciencies, HIV, use of corticosteroids, or use of other immune weakening medicines, neurologic conditions such as dementia, liver diseases,

---

[18] *Id.*

[19] CDC, *Who is at Increased Risk for Severe Illness? Older Adults*, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/olderadults.html (last accessed July 7, 2020).

[20] CDC, Who is at Increased Risk for Severe Illness? People with Certain Medical Conditions, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extraprecautions/people-with-medical-conditions.html (last accessed July 7, 2020).

7

pregnancy, pulmonary fibrosis, thalassemia, Type 1 diabetes, or individuals who are smokers.[21]

### 1. Jones' medical conditions warrant a release.

Jones is currently on an Albuterol Inhaler (HFA – 90 MCG/ACT)[22] four times per day due to chronic care asthma. (See Exhibit B). He has been under noted asthma care since his initial review at the BOP in 2013. Asthma has been noted as an immunocompromising disease affected by COVID19.[23] Without relief from this Court, Jones may be exposed to dangerous situations. Some courts are already offering relief.

For example, in the Middle District of Pennsylvania, Judge John E. Jones varied downward from a sentence of imprisonment in two cases to home confinement because of the pandemic.[24] The Honorable Kiyo A. Matsumoto from the Eastern District of New York has also followed suit. *United States v. Hansen*, No. 07-CR-00520(KAM), 2020 U.S. Dist. LEXIS 61946 (E.D.N.Y. Apr. 8, 2020).

---

[21] *Id.*

[22] Albuterol (also known as salbutamol) is used to prevent and treat wheezing and shortness of breath caused by breathing problems (such as asthma, chronic obstructive pulmonary disease). https://www.webmd.com/drugs/2/drug-4872-1697/albuterol-sulfate-inhalation/albuterol-salbutamol-breath-activated-inhaler-oral-inhalation/details

[23] *Id.* Fn. 19

[24] See, *United States v. Foster*, 1:14-cr-324-02, (USDC MD Penn).

8

States as well are taking similar actions. The New Jersey Supreme Court Chief Justice entered an order on March 23, 2020; with the agreement of county prosecutors, the Attorney General, and Public Defenders; for the commutation or suspension of sentences to release approximately 1000 low-risk persons serving jail sentences.[25] For persons in custody in federal prisons, President Trump is considering issuing an Executive Order to release inmates in federal prisons.[26] One of the reasons is because inmates are a high-risk group for contracting coronavirus and are in a high-risk group for serious complications from the virus. Also, persons with underlying health conditions, *regardless of their age*, are in a high-risk group for serious complications from the coronavirus.

### III. Experts agree that Inmates are at a higher risk of COVID 19.

Inmates are at a heightened risk of contracting COVID19 as the pandemic spreads. *See, e.g.*, Joseph A. Bick, *Infection Control in Jails and Prisons*, 45 Clinical Infectious Diseases 1047, 1047 (Oct. 2007)[27] (noting that in jails "[t]he probability of transmission of potentially pathogenic organisms is increased by crowding, delays in medical evaluation and treatment, rationed access to soap,

---

[25] https://www.njcourts.gov/pressrel/2020/pr032320a.pdf?c=IRD

[26] https://www.businessinsider.com/trump-consider-coronavirus-executive-order-federal-prisons2020-3

[27] Source: https://doi.org/10.1086/521910

9

water, and clean laundry, [and] insufficient infection-control expertise"); *see also* Claudia Lauer & Colleen Long, *US Prisons, Jails On Alert for Spread of Coronavirus*, Associated Press (Mar. 7, 2020). The magnitude of this risk continues to grow as the number of cases all over the United States rises exponentially with each passing day. Social distancing and staying at home is particularly vital because "[s]tudies suggest that coronaviruses (including preliminary information on the COVID19 virus) may persist on surfaces for a few hours or up to several days."[28] "According to a recent study published in the *New England Journal of Medicine*, SARS-CoV-2, the virus that causes COVID19, can live in the air and on surfaces between several hours and several days. The study found that the virus is viable for up to 72 hours on plastics, 48 hours on stainless steel, 24 hours on cardboard, and 4 hours on copper. It is also detectable in the air for three hours."[29] Hence, the rapid spread of COVID19 can result from fomites (objects or material that are likely to carry infections), such as elevator buttons, restroom taps, and clothes.[30] Spread is inevitable inside the jails.

---

[28] Q&A on coronaviruses (COVID-19), World Health Organization, at https://www.who.int/news-room/q-a-detail/qa-coronaviruses (March 23, 2020)

[29] Samuel Volkin, How Long Can The Virus That Causes COVID-19 Live On Surfaces?, John Hopkins University HUB, at https://hub.jhu.edu/2020/03/20/sars-cov-2-survive-on-surfaces/ (March 23, 2020)

[30] "Indirect Virus Transmission in Cluster of COVID-19 Cases, Wenzhou, China, 2020", Emerging Infectious Diseases, 3/12/20, Volume 26, Number 6-June 2020, CDC at https://wwwnc.cdc.gov/eid/article/26/6/20-0412_article(March 15, 2020),

10

### IV. Medical experts agree that inmates like Jones are at risk due to COVID19.

Doctor Brie Williams is a licensed physician and Professor of Medicine at the University of California, San Francisco ("UCSF") in the Geriatrics Division, Director of UCSF's Amend: Changing Correctional Culture Program, as well as Director of UCSF's Criminal Justice & Health Program. Dr. Williams an expert in clinical research has focused on improved responses to disability, cognitive impairment, and symptom distress in older or seriously ill prisoners; a more scientific development of compassionate release policies; and broader inclusion of prisoners in national health datasets and clinical research. (See Exhibit C). The expert opinion of Dr. Williams as determined that "the risk of infection and accelerated transmission of COVID19 within jails and prisons is extraordinarily high" (Exhibit C, p. 2), "inmate populations also have the highest risk of acute illness and poor health outcomes if infected with COVID19"; (Exhibit C, p. 3) and that "the entire community is at risk if prison populations are not reduced." (Exhibit C, p. 3). In sum, as the World Health Organization has warned, prisons around the world can expect "huge mortality rates" from COVID19 unless they take immediate action including screening for the disease.[31] The BOP is not

---

[31] Hannah Summers, 'Everyone Will Be Contaminated': Prisons Face Strict Coronavirus Controls, The Guardian (Mar. 23, 2020), https://www.theguardian.com/global-development/2020/mar/23/everyone-will-be-contaminatedprisons-face-strict-coronavirus-controls.

11

actively testing Jones or any inmate at his facility for COVID19. Most staff, rightfully so, are scared that they will infect themselves and their family.

Dr. Danielle C. Ompad, Ph.D. an expert regarding SARS-CoV-2 infection (otherwise known as COVID-19) in correctional settings takes a similar approach. Dr. Ompad reaches a similarly grim conclusion:

> a. The risk of transmission of COVID-19 in correctional settings is high. Correctional facilities are often crowded and people who are incarcerated (PWI) are likely unable to maintain the requisite social distance of six feet. This is especially an issue within individual cells, where bunked beds make distancing of six feet impossible. Cafeteria areas and dormitory-type sleep quarters also create challenges to social distancing depending on how these spaces are organized and the number of people in the space at any one time.
>
> b. Correctional facilities have significant flows of people from the community into the facility and back out. Correctional staff, visitors, and attorneys come to and from the facility from their home communities. In addition, newly incarcerated individuals, who have been circulating in the community prior to entering the facility, are coming into facilities. As a result, current PWI are likely to be exposed to COVID-19 through their interactions with correctional staff, visitors, attorneys, and newly arrived PWI.
>
> c. Generally, there is a shortage of personal protective equipment (PPE) such as N95 masks in the U.S. Local jurisdictions are prioritizing health care facilities for scarce PPE, making access to such protective gear challenging for correctional facility staff.
>
> d. Client reports from nine Massachusetts correctional facilities revealed that PWI at two facilities did not have access to soap at all and only three had access to free soap. In four facilities, PWI did not have access to hand sanitizer.
>
> e. Thus, the risk for transmission in correctional facilities may be high. This will have implications for the general population from which correctional staff, visitors, and attorneys come and as a result, may place communities in

12

which correctional facilities are located at enhanced risk of COVID-19 transmission as well as challenging the limited health care infrastructure and staff in local hospitals.

Id. (Exhibit D, Expert Report Dr. Danielle C. Ompad, Ph.D. At ¶-6)

Dr. Ompad concludes that the risk of severe disease and death among incarcerated individuals is high:

> a. If COVID-19 enters correctional facilities, the likelihood that there will be severe cases is high. According to the Massachusetts Department of Corrections, 983 PWI (11.2%) were aged 60 and over in 2019 among 8,784 total PWI. As previously mentioned, older adults are at increased risk for severe COVID-19 complications as well as death.
>
> b. According to data from the 2011-2012 National Inmate Survey,11 there is a substantial burden of disease among correctional populations. Approximately half of state and federal prisoners and jail inmates have ever had a chronic medical condition (Jonesined as cancer, high blood pressure, stroke-related problems, diabetes, heart-related problems, kidney-related problems, arthritis, asthma, and/or cirrhosis of the liver). Twenty-one percent of state and federal prisoners and 14% of jail inmates have ever had tuberculosis, hepatitis B or C, or sexually transmitted infections (excluding HIV or AIDS).

Id. (Exhibit D, Expert Report Dr. Danielle C. Ompad, Ph.D. at ¶-6)

In essence, Dr. Ompad sums up her opinion as follows "By acting now and releasing a significant number of people who are currently detained you will save lives." *Id.* at 7.

### V. Attorney General Barr has encouraged the use of home confinement due to the COVID 19 pandemic.

On April 3, 2020, the Attorney General Barr directed all federal prisons to begin immediately, processing inmates that are affected by COVID 19 for release,

13

quarantine, and/or home confinement. (See Exhibit E). Recognizing the urgency of protecting federal inmates from the spread of the COVID19 pandemic, Attorney General Barr issued a memorandum on March 26, 2020 ("March 26 Memorandum") directing the BOP to prioritize the use of its "various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID19 pandemic." Id. at 1. The March 26 Memorandum also provided a non-exhaustive list of discretionary factors that the BOP may consider in assessing which inmates should be granted home confinement, including (i) "[t]he age and vulnerability of the inmate to COVID19"; (ii) "[t]he security level of the facility currently holding the inmate, with priority given to inmates residing in low and minimum security facilities"; (iii) "[t]he inmate's conduct in prison"; and (iv) "[t]he inmate's crime of conviction, and assessment of the danger posed by the inmate to the community." See id. at 1-2. Barr, under the authority of the CARES ACT, directed that all "at-risk inmates be considered" no only those previously eligible for transfer. Jones indirectly meets these criteria for release. It also bears emphasis that Jones is a prime candidate for this type of "extraordinary" and "compelling" relief. 18 USC § 3582(c)(1)(A)(i). He has an unblemished record in prison. Jones has accomplished much during his incarceration:

- Nutrition
- VR NCCER CORE Curriculum
- CORE Stability Inst. Train
- Stronger ABS/Back Inst.

14

- Tutor Train-GD/ESL/ACE/VT/RPP
- RPP FCC AIDS Awareness
- SHU Nutrition Class
- SHU Muscular Flexibility Course
- Nervous System Course
- Articular Muscular System
- GED Courts
- Tissue Integumentary System
- SHU Eating to Win
- Cell Structure
- SHU Cholesterol
- Wellness Library Course
- SHU Cardio Endurance Course
- Stress Management
- Preventing Cardio Disease
- Comprehensive Fitness
- Weight Management
- CDL ACE
- Typing ACE
- Body Competition
- American History Part 2
- Commercial Flooring Install
- RP6-Univ Child Day Parent Class
- ACE Understanding Govt. Class
- ACE World History Class
- Drug Education Complete

However, even those accomplishments do not undermine COVID-19's effects should he be infected. His record of accomplishment of compliance reflects a greater level of respect and responsibility that militates in favor of the requested relief. Any possible benefits in having Jones serve the rest of his sentence at FCI Gilmer before his scheduled transferred to home confinement is far outweighed by the risks presented to Jones by this historic pandemic.

15

### 1. Jones's Post Release Plans

If this motion is granted, Jones will reside with his family in Yonkers, New York, and will quarantine as required by the CDC and by Attorney General Barr's directives. His family is quarantining and is in great health with no known exposure to or exhibited symptoms of COVID19. After his release and if ordered by the court, he will stay at his residence in Yonkers, New York he will self-quarantine and best protect himself and others in the community from exposure to COVID19.

Jones's family can support him financially during home confinement and will enroll in private health insurance as soon as he is released. If released, he will be able to be treated by his long-time physician should the need occur. Therefore, based on the totality of the circumstances, transferring Jones to home confinement in Yonkers, New York will not increase—and would likely decrease – his risk of contracting the potentially fatal disease.

16

## CONCLUSION

Because prison conditions that place him at greater risk from the coronavirus, that will not improve, and because the coronavirus presents a national emergency; Jones requests that this Court grant his release to time served.

Done this 4, day of September 2020.

*[signature]*

Mark Jones
Reg. # 65522-054
Gilmer FCI
P.O. Box 6000
Glenville, WV 26351

## CERTIFICATE OF SERVICE

I HEREBY DO CERTIFY, that a true and correct copy of this motion was mailed to the recipients noted below sufficient First Class Postage prepaid via the Federal Bureau of Prison's Legal Mail System.

DOJ-USAO
1 St. Andrew's Plaza
New York, NY 10007

Done this ____, day of September 2020.

Mark Jones
Reg. # 65522-054
Gilmer FCI
P.O. Box 6000
Glenville, WV 26351

Application for Compassionate Release, pursuant to 18 U.S.C. Section 3582, is denied. While Mr. Jones suffers from asthma, the severity of which is open to question, and while asthma has been identified as a risk factor in COVID cases, even serious cases of asthma do not present as great as risk as originally feared. (See "Asthma is Absent Among Top Covid-19 Risk Factors, Early Data Shows," N.Y. Times, Apr. 16, 2020). Moreover, Mr. Jones is in his last 20s, thus far below the age range where the risks from contracting COVID are exponentially higher, and FCI Gilner, where Mr. Jones is housed, is currently reporting only 3 active cases, less than half as of last week. Thus, Mr. Jones has not met his burden of demonstrating that there are extraordinary and compelling circumstances that justify his early release.

Beyond this, the Court finds that consideration of the Section 3553(a) factors cuts against early release. Mr. Jones was convicted of serious narcotics and firearms charges and was part of a violent gang that inflicted widespread fear in the community. Granting his release would undermine respect for the law and dilute the deterrent purpose of the original sentence.

For all these reasons, the application is denied.

The Government is to mail this memo endorsement to Mr. Jones and certify that it did so by 10/9/0.

So Ordered.

10/6/20

18